COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
 2-05-071-CV

 

 

ETHICON ENDO-SURGERY, INC.                                            APPELLANT

 

                                                   V.

 

DIANNE MEYER                                                                     APPELLEE

 

                                              ------------

 

            FROM
THE 393RD DISTRICT COURT OF DENTON COUNTY

 

                                              ------------

 

                     OPINION
ON MOTION FOR REHEARING

 

                                              ------------

On Appellee=s motion for rehearing, we withdraw our opinion and judgment of April
12, 2007, and substitute the following.

                                            Introduction








This is a marketing-defect
products liability case.  The product in
question is the TLC-55 linear cutter/surgical stapler designed, manufactured,
and marketed by Appellant Ethicon Endo-Surgery, Inc. (AEthicon@).  Ethicon appeals from a jury verdict and
judgment in favor of Appellee Dianne Meyer. 
The key question is whether the surgeon who used the TLC-55 on Meyer
conclusively negated producing cause when he testified that he had independent
knowledge of the risks of which Meyer claims Ethicon should have warned
him.  We answer Ayes@ to that
question, reverse the trial court=s judgment, and render a take-nothing judgment.

                                            Background

On February 7, 2000, Dr.
Curtis Mosier performed an exploratory laparoscopy on Meyer in an attempt to
find the cause of her generalized abdominal pain.  On February 9, 2000, Dr. Mosier discovered
that a loop of Meyer=s small
bowel had herniated through the laparoscopy incision, lost its supply of
oxygen, and burst. 








That same day, Dr. Mosier
performed a second laparoscopy on Meyer to repair the damage to her intestines
by resectioning part of her small bowel. 
The resectioning involved removing a three-foot length of Meyer=s intestines and reconnecting the cut ends.  Dr. Mosier performed the surgery with the
assistance of a TLC-55 linear cutter designed, manufactured, and marketed by
Ethicon.  A linear cutter is a surgical
device that creates parallel lines of staples and cuts the tissue between the
staple lines, all with one Afiring@ of the
device. In this particular procedure, Dr. Mosier used the TLC-55 to staple and
cut Meyer=s bowel on
either side of the part to be removed. 
He then also used the TLC-55 to attach the remaining portion of the
bowel together and create an Aanastomosis@ between the
cut ends of the bowel by stapling, rather than suturing, them together and
cutting an opening between them to restore the flow of bowel contents.  Dr. Mosier testified that he Amilked@ or tested
the anastomosis to ensure that gas and fluid could pass through the opening
without leaking out of Meyer=s bowel.  Dr. Mosier made sure
the staples were holding and that there was no leakage, and he thought that the
anastomosis was working well. 

In the days following the
surgery, Meyer=s condition
first improved, then declined.  By
February 17, enteric fluid, or bowel content, was leaking out of the
laparoscopy incisions in Meyer=s abdomen.  On February 21,
2000, Meyer was transferred to another hospital, where a second surgeon, Dr.
George Shires, performed a third operation. 
Dr. Shires discovered that one of the staple lines from the February 9
anastomosis had Adehisced,@ or separated, allowing bowel contents to leak into Meyer=s abdomen and cause a serious infection.  As a result of the dehiscence and infection,
Meyer underwent several additional surgical procedures and a lengthy
hospitalization. 








Meyer sued Dr. Mosier for
medical negligence on August 31, 2001. 
On March 11, 2002Ctwo years
and nineteen days after the February 9, 2000 surgeryCMeyer amended her petition and sued Ethicon for products liability,
alleging design, manufacturing, and marketing defects in the TLC-55.  Meyer eventually settled with Dr. Mosier,
dismissed other defendants, and proceeded to trial against Ethicon.  A jury found that the TLC-55 was defectively
marketed and awarded $538,281.73 in damages to Meyer,[1]
and the trial court entered judgment accordingly.  On appeal, Ethicon argues, among other
things, that Meyer=s claim was
barred by limitations and that Dr. Mosier=s testimony regarding his independent knowledge of the risks of using
a linear cutter/stapler conclusively negated producing cause with regard to the
TLC-55=s alleged marketing defect.

                                         Producing
Cause

In the second part of its
fourth issue, Ethicon argues that the evidence conclusively negated producing
cause because Dr. Mosier testified that he had independent knowledge of the
risks of using the TLC-55 even if Ethicon failed to warn him of those
risks.  We agree.








This is a legal sufficiency
challenge.  We will sustain a
legal sufficiency challenge when the evidence establishes conclusively the
opposite of a vital fact.  Uniroyal
Goodrich Tire Co. v. Martinez, 977 S.W.2d 328, 334 (Tex. 1998), cert.
denied, 526 U.S. 1040 (1999); Robert W.
Calvert, ANo Evidence@ and AInsufficient
Evidence@ Points of
Error, 38 TEX. L. REV. 361, 362-63 (1960).  In determining
whether there is legally sufficient evidence to support the finding under
review, we must consider evidence favorable to the finding if a reasonable
fact-finder could, and disregard evidence contrary to the finding unless a
reasonable fact-finder could not.  City
of Keller v. Wilson, 168 S.W.3d 802, 827 (Tex. 2005).[2]








A marketing defect occurs
when a defendant knows or should know of a potential risk of harm presented by
the product but markets it without adequately warning of the danger or
providing instructions for safe use. 
Bristol‑Myers Co. v. Gonzales, 561 S.W.2d 801, 804 (Tex.
1978); Benavides v. Cushman, Inc., 189 S.W.3d 875, 881 (Tex. App.CHouston [1st Dist.] 2006, no pet.); USX Corp. v. Salinas, 818
S.W.2d 473, 482 (Tex. App.CSan Antonio 1991, writ denied) (op. on reh=g).  A marketing defect cause of
action consists of five elements:  (1) a
risk of harm that is inherent in the product or that may arise from the
intended or reasonably anticipated use of the product must exist, (2) the
product supplier must actually know or reasonably foresee the risk of harm at
the time the product is marketed, (3) the product must possess a marketing
defect, (4) the absence of the warning or instructions must render the product
unreasonably dangerous to the ultimate user or consumer of the product, and (5)
the failure to warn or instruct must constitute a causative nexus in the
product user=s
injury.  Salinas, 818 S.W.2d at
482-83.








When a product=s user is aware of the possible risks involved with a product=s use but decides to use it anyway, the inadequacy of the product=s warning is not, as a matter of law, a producing cause of an injury
resulting from such use.  Stewart v.
Janssen Pharmaceutica, Inc., 780 S.W.2d 910, 912 (Tex. App.CEl Paso 1989, writ denied).  In Janssen,
the plaintiff suffered respiratory arrest after his anesthesiologist
administered a drug manufactured by the defendant.  Id. at 911.  The anesthesiologist testified that he was
aware of the risk of respiratory depression with any anesthetic, regardless of
any warning from the manufacturer.  Id.
at 912.  The court held that the
anesthesiologist=s testimony
negated producing cause as a matter of law. 
Id.; see also Boswell v. Burroughs Wellcome Co., No.
05-95-01389-CV, 1997 WL 198746, at *2-3 (Tex. App.CDallas April 24, 1997, writ denied) (holding producing cause negated
in defectively-marketed-drug case when anesthesiologist testified that he was
aware of the risks arising from drug=s use).  While Texas courts have
thus far applied the independent knowledge doctrine to drug cases only, no
court has rejected its application to medical device cases, and at least one
court applying Texas law has applied the doctrine in the medical device
context.  See Porterfield v. Ethicon,
Inc., 183 F.3d 464, 468 (5th Cir. 1999) (holding producing cause negated
when plaintiff alleged marketing defect in surgical mesh that caused abdominal
infection, but surgeon testified that he was aware of the risk of infection and
decided to use the mesh anyway); see also Dyer v. Danek Med., Inc., 115
F. Supp. 2d 732, 741 (N.D. Tex. 2000) (applying doctrine to spinal fixation
device).  Many other jurisdictions have
likewise applied the independent knowledge doctrine in the medical device
context.  See, e.g., Kirsch v. Picker
Int=l, Inc., 753 F.2d 670, 671-72 (8th Cir. 1985) (applying Missouri law) (applying
doctrine to x-ray therapy machine); King v. Danek Med., Inc., 37 S.W.3d
429, 453 (Tenn. Ct. App. 2000) (applying doctrine to spinal fixation device); Rosburg
v. Min. Mining & Mfg. Co., 181 Cal. App. 3d 726, 735 (Cal. Ct. App.
1986) (applying doctrine to breast implant).[3]








We first identify the warning
that Meyer claims Ethicon should have given to Dr. Mosier.  Meyer=s expert witness, Jeff Butler, testified that Ethicon should have
warned physicians of the risk of catastrophic staple-line failure even if the
physician operates the stapler properly. 
He highlighted the absence of a warning that a staple line can fail even
after the surgeon has checked the integrity of the staple line as the crux of
this case:

Q.     Is there anything in that package insert with the device that
advise[s] physicians if they check the staple line appropriately and there is
hemostasis, that staple line dehiscence or failure  can still later occur?

 

A      No.  And I believe that=s the
crux of the matter here. 

 

Butler apparently prepared a document reciting
several proposed warnings that he thought Ethicon should have given with regard
to the TLC-55, but that document was not admitted into evidence. 

We now examine Dr. Mosier=s testimony.  Dr. Mosier is a
board-certified general surgeon who received his medical degree in 1978 and has
practiced surgery in Denton County for twenty years.  He specializes in abdominal surgery,
including laparoscopic surgery in the abdominal cavity with light and video
cameras.  Dr. Mosier testified that he
has used surgical staplers and linear cutters since his residency to reconnect
intestines hundreds to thousands of times. 
When asked whether the TLC-55 package insert warned of the danger of
staple-line dehiscence, Dr. Mosier answered, AI don=t recall it,
no.  But I don=t recall reading that package insert.@ 








Dr. Mosier testified that in
February 2000, he was aware that a staple line could leak, and he did not need
Ethicon to tell him that a staple-line leak was something that could
occur.  He testified that he did not need
Ethicon to tell him that he needed to check the integrity of the staple line at
the time of surgery.  Dr. Mosier said
that even after checking the integrity of a staple line, there is the
possibility that it may leak; Ait=s just
something that happens,@ and it can
happen from a number of possible causes, including tension on the line, damage
from radiation, bleeding, and improper nourishment.  He testified that a leak in a staple line can
result in total staple-line dehiscence. 
Dr. Mosier stated that if he received a safety alert that gave him no
more knowledge than he already had, it probably would not affect his approach
to a surgery.  He testified that he did
not know, and there was no way to say with any certainty, what caused Meyer=s staple line to dehisce.[4]


Dr. Mosier also testified
about his first-hand knowledge of the risk of total staple-line dehiscence that
he learned from the outcome of a procedure he performed on another patient two
months before Meyer=s
surgery.  Dr. Mosier testified that in
December 1999 he created an anastomosis with a surgical stapler between APatient Y=s@ stomach and intestine.  The
staple line totally dehisced.  Dr. Mosier
said that although he had reported Patient Y=s dehiscence as involving the TLC-55, it in fact involved another kind
of surgical stapler, and he was not sure whether it was made by Ethicon or a
competitor. 








It is clear from Dr. Mosier=s testimony that he had independent knowledge of the risk that Butler
testified Ethicon should have warned him about: 
that a staple line may completely fail even if the surgeon tests the
staple line and is satisfied with its integrity.  Moreover, Dr. Jay Hoppenstein, Ethicon=s expert, testified that the possibility of staple-line failure was
common knowledge among the relevant medical community, general surgeons. 

Meyer argues that Dr. Mosier=s testimony is insufficiently specific to negate causation because he
did not state that he had independent knowledge of the exact risk that befell
her.  But Dr. Mosier testified that it
was impossible to determine what caused Meyer=s staple line to dehisce, and Meyer=s own expert was unable to state how the TLC-55 caused the
dehiscence.  Therefore, there is no
evidence that the failure to warn of any specific or exact risk caused Meyer=s injury.[5]  It is undisputed that Meyer suffered a total
staple-line dehiscence, and while the cause of the dehiscence may be unknown,
Dr. Mosier testified that he was aware of the risk of dehiscence as Ajust something that happens.@ 








Meyer next argues that Dr.
Mosier=s testimony supports the jury=s verdict on causation with regard to two of the specific warnings
that Meyer contends Ethicon should have given to him.  First, Meyer states that Dr. Mosier Aspecifically testified@ that he would not have used the TLC-55 on Meyer if he had been made
aware by Ethicon of the extent of adverse-result reports from  other product users.  We disagree. 
Following is the relevant testimony:

Q.     [] If you had seen a ADear Doctor@
letter related to this product and related to any idiopathic failures of the
device, what would have been your election with regard to that letter moving
forward?

 

[Lengthy
objections from Defense Counsel.]

 

Q.     Do you remember the question, Dr. Mosier?

 

A.     I do.  I don=t
think there is any question at this point that that=s
correct.  If I -- looking back, if I had
gotten a product warning letter from the company, I would have taken that very
seriously.  However, I didn=t get
that letter and it is speculation to know since I had not had a
problem with the product before what I would have done.  But looking back, the answer is yes.[6]  [Emphasis added.]

 








Dr. Mosier testified that he did not know what he
would have done and could only speculate, not that he would have refrained from
using the TLC-55.  Speculation is not
evidence.  Joe v. Two Thirty Nine
Joint Venture, 145 S.W.3d 150, 164 (Tex. 2004).  Thus, there is no evidence that Dr. Mosier
would not have used the TLC-55 if Ethicon had warned him about bad results
experienced by other patients. 

Second, Meyer states that Dr.
Mosier testified that he would not have used the TLC-55 on a patient who had a
certain condition if Ethicon had warned him that such condition contraindicated
the stapler=s use and
that Ethicon=s expert
witness, Dr. Hoppenstein, identified several conditions that contraindicate the
use of a stapler.  Our own review of the
record shows that Dr. Mosier testified that he would not have used the TLC-55
on a patient with diabetes if Ethicon had warned that diabetes can lead to staple-line
dehiscence.  Nothing in the record
suggests that Meyer was diabetic.  Dr.
Hoppenstein identified several other conditions that could cause an anastomosis
to fail, regardless of whether it was stapled or hand-sewn, and that the
likelihood of failure is the same regardless of whether the anastomosis is
stapled or hand-sewn.  The conditions
about which Dr. Hoppenstein testified are germane to the risks of anastomoses
generally and not to the risks of using a surgical stapler specifically.  Assuming that the general anastomosis risk
factors identified by Dr. Hoppenstein could form the basis of an appropriate
warning, there is no evidence that the lack of such a warning caused Meyer=s injury.








Dr. Mosier=s testimony established that he was aware of the risk of a total
staple-line failure and complete dehiscence regardless of whether Ethicon
failed to provide an adequate warning. 
We hold that Dr. Mosier=s independent knowledge of the risk identified by Meyer=s own expert conclusively negated causation, and we sustain the second
part of Ethicon=s fourth
issue.

                                             Conclusion

Having sustained Ethicon=s fourth issue in part, and not reaching its remaining issues, we
reverse the trial court=s judgment
and render judgment that Meyer take nothing. 
See Tex. R. App. P.
43.2(c), 47.1.

 

ANNE GARDNER

JUSTICE

 

PANEL A:   DAUPHINOT and GARDNER, JJ.; and WILLIAM H.
BRIGHAM, J. (Senior Justice, Retired, Sitting by Assignment).

 

DAUPHINOT, J. filed a dissenting opinion.

 

DELIVERED:   December 20, 2007

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 











 
 
 
 
 
 
 




 

 

 

 

 

 

                                               COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

                                        NO.  2-05-071-CV

 

 

ETHICON ENDO-SURGERY, INC.                                            APPELLANT

 

                                                   V.

 

DIANNE MEYER                                                                     APPELLEE

 

                                              ------------

 

            FROM
THE 393RD DISTRICT COURT OF DENTON COUNTY

 

                                              ------------

 

           DISSENTING
OPINION ON MOTION FOR REHEARING

                                              ------------

On Appellee=s motion for rehearing, I withdraw my dissenting opinion issued April
12, 2007, and substitute the following.

I must respectfully dissent
from the majority=s reversing
the jury=s verdict and substituting its own judgment because the evidence
supports the jury's verdict.








Dr. Mosier's testimony does
not conclusively negate the producing cause element.  Although Dr. Mosier testified that he was
aware of the risks of using the TLC-55, his testimony clearly revealed that he
was not aware of the full extent of the risks at the time of Ms. Meyer=s surgery.  The majority finds
that Dr. Mosier=s testimony
was unclear.  Apparently the jury,
however, who was faced not with a cold record but a live witness, clearly
understood Dr. Mosier=s
testimony.  He testified that he would
have taken a warning letter very seriously, but he received none.  He further explained,

If [safety alerts] come from the company, it
means that the company has had a chance to really review the product itself,
whether it be a medication or a medical device product, enough that they are
taking the time to warn you about theseCthese situations.  It=s different when it comes
from the company than if it=s just something that you
heard or just a report that was given. 

 

Because of the knowledge that
Dr. Mosier gained through Ms. Meyer=s treatment and the litigation, he has abandoned his use of Ethicon=s stapler.  He also contacted
Ethicon to report the problems he had experienced with the TLC-55 in treating
Ms. Meyer and at least one other patient. 


Based on the record as a
whole, I would hold that there was evidence to support the jury=s determination of causation.[7]  Because anything more than a scintilla of
evidence is legally sufficient to support the jury finding,[8]
I dissent from the majority's reversing and rendering on this ground.

 

LEE ANN DAUPHINOT

JUSTICE

 

DELIVERED: 
December 20, 2007











[1]The
jury also found negligence on the part of Dr. Mosier and assigned 50%
proportionate responsibility each to Ethicon and Dr. Mosier. 





[2]In
her motion for rehearing, Meyer argues that we applied the wrong standard of
review because the independent knowledge doctrine is an affirmative defense on
which Ethicon had the burden and urges us to adopt the standard set forth in Sterner
v. Marathon Oil Co., 767 S.W.2d 686, 690 (Tex. 1989).  Under the Sterner standard of review,
a court first examines evidence to support the jury=s
finding while ignoring evidence to the contrary.  Id. 
If there is no evidence to support the jury=s
finding, then the court examines the entire record to determine whether the
evidence establishes the opposite conclusion as a matter of law.  Id. 
In our original opinion we held, and in this opinion on rehearing we
hold, that there is no evidence that Dr. Mosier would not have used Ethicon=s
stapler had he received the warning suggested by Meyer (infra, p. 12) and that
the evidence conclusively establishes Dr. Mosier=s
independent knowledge of the risk of staple line failure (infra, p. 13).  Thus, regardless of who had the burden of
proof on independent knowledge, our opinion covers the same analytical steps as
those set out in Sterner.





[3]On
appeal, Meyer does not contest the applicability of the doctrine to this case;
rather, she argues that the facts of this case do not negate causation when the
doctrine is applied.





[4]Dr.
Shires, the surgeon who repaired Meyer=s failed anastomosis, also
testified that he had no opinion as to what caused the staple line to fail. 





[5]See
Rosburg, 181 Cal. App.3d at 735 n.5 (APlaintiff in this case failed
to establish that any specific defect caused the [breast-implant] deflation;
thus, she cannot urge that a more specific warning could have prevented her
injury.@).

 





[6]The
dissent disagrees with assessment of Dr. Mosier=s
testimony and cites a portion of Dr. Mosier=s testimony where he said he
would have taken a Adear
doctor@
letter seriously.  But his testimony that
he would have taken a safety alert seriously is no evidence that he would have
discontinued use of the TLC-55.  The dissent
presumes to know what Dr. Mosier would have done when Dr. Mosier himself said
that he could only speculate. 





[7]See
Cont=l
Coffee Prods. Co. v. Cazarez, 937 S.W.2d 444, 450 (Tex.
1996); Leitch v. Hornsby, 935 S.W.2d 114, 118 (Tex. 1996).





[8]Cazarez, 937
S.W.2d at 450; Leitch, 935 S.W.2d at 118.